# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| SCOTT SLOANE, | 3:11-cv-00008-ECR (WGC) |
| Plaintiff, | |
| vs. | **ORDER** |
| STATE OF NEVADA, et. al. | |
| Defendants. | |

Before the court is Plaintiff's Motion to Amend his Complaint. (Doc. # 23.)[1] Defendants opposed (Doc. # 25) and Plaintiff replied (Doc. # 31). Plaintiff also seeks permission to exceed the page limit with respect to his amended complaint. (Doc. # 24.) Defendants opposed. (Doc. # 26.)

## I. BACKGROUND

Plaintiff Scott Sloane (Plaintiff), a *pro se* litigant in custody of the Nevada Department of Corrections (NDOC), brings this action pursuant to 42 U.S.C. § 1983. (Pl.'s Compl. (Doc. #7) at 4.) At all relevant times, Plaintiff was housed at Ely State Prison (ESP). (*Id*.) Defendants are Renee Baker, David McNeely, and Claude Willis. (*See* Doc. # 7 at 2, Screening Order (Doc. # 6) at 4-5.)

Plaintiff initially filed his Complaint in the Seventh Judicial District Court of the State of Nevada, White Pine County, on August 27, 2010, and it was subsequently removed by Defendants on January 5, 2011. (*See* Doc. # 1.)

On screening, it was determined Plaintiff sets forth a colorable claim for violation of his

---
[1] Refers to court's docket number.

1  First Amendment Right to Free Exercise of Religion. (Doc. # 6 at 3-5.) Plaintiff alleges that he
2  is Jewish and receives a kosher diet at ESP. (Doc. # 7 at 5.)  He asserts that while at ESP, he
3  received kosher food and supplies for the First and Second Seder of Passover in 2007, 2008,
4  and 2009. (*Id.*) NDOC does not provide the supplies necessary for the First and Second Seder
5  rituals, but allows an outside organization, the Aleph Institute, to send in the necessary
6  supplies. (*Id.*) The First Seder ritual in 2010 was to commence one (1) hour after sunset on
7  March 29, 2010. (*Id.*)

8  Plaintiff claims that two (2) months in advance, he began to inquire about the supplies
9  sent by the Aleph Institute and the kosher food for the 2010 Passover rituals.  (Doc. # 7 at 6.)
10  On March 29, 2010, at approximately 12:30 p.m., Plaintiff alleges that he informed someone
11  in his unit of the days events and religious obligations, and inquired when the Seder ritual
12  supplies would be delivered. (*Id.*) He claims that in previous years they were delivered by the
13  chaplain at approximately 3:00 p.m. on the day of the First Seder. (*Id.*) Senior Officer Clark
14  advised Plaintiff that the Seder supplies would be delivered with the unit dinner cart. (*Id.*)
15  Plaintiff alleges that the supplies were not delivered with the food cart at approximately 3:45
16  p.m. (*Id.*) He alleges that Defendant Willis was refused to deliver the supplies from the Aleph
17  Institute to him for the First Seder ritual. (*Id.* at 7.) He contends that Defendant Willis
18  delivered them instead on March 30, 2010, the day of the Second Seder. (*Id.* at 8.)

19  Plaintiff filed multiple emergency grievances regarding the Seder supplies, asserting that
20  NDOC still had time to rectify the situation. (*Id.* at 6-7.) He claims that Defendant McNeely
21  was notified of the situation by way of his emergency grievance. (*Id.* at 8.)  He alleges that
22  Defendant McNeely, as one of the acting chaplains at ESP, failed to rectify the situation. (*Id.*)

23  Plaintiff alleges that additional violations of his First Amendment rights occurred on
24  March 29, 2010 and April 3, 2010. (Doc. # 7 at 6.) He claims that on March 29, 2010, ESP
25  refused to give Plaintiff the proper meal items to break the fast of the first born. (*Id.*) Instead,
26  he asserts he was given inappropriate food items, such as a not kosher for Passover entree and
27  leavened bread. (*Id.*) He filed an emergency grievance related to this incident. (*Id.* at 6-7.) On

28  2

April 3, 2010, Plaintiff contends that he was denied a kosher for Passover dinner meal, and instead was given two (2) pouches of tuna, which he refused to eat and filed an emergency grievance. (*Id.*) Plaintiff claims that Defendant McNeely allowed him to be served the non-kosher for Passover pouches of tuna. (*Id.* at 9.) He further claims that Defendant McNeely misrepresented that the food Plaintiff was served was kosher for Passover. (*Id.*)

Plaintiff asserts that Defendant Renee Baker was copied on the answer from Defendant McNeely, and knew about the Seder rituals as early as March 3, 2010. (Doc. # 7 at 10.) Plaintiff alleges that when Defendant Baker was notified that Plaintiff filed an emergency grievance regarding the supplies from the Aleph Institute, she failed to act diligently to correct the problem when three (3) hours remained to get Plaintiff the supplies for the First Seder. (*Id.*)

Defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment on June 6, 2011. (Doc. # 17.) Plaintiff opposed on July 18, 2011. (Doc. # 21.) Defendants filed a reply on July 27, 2011. (Doc. # 22.)

On July 21, 2011, Plaintiff filed the instant Motion to Amend his Complaint. (Doc. # 23.) Plaintiff seeks to add a defendant to his existing First Amendment claim, Thomas Prince, who he asserts is a former Lieutenant at ESP and the shift supervisor on March 29, 2010, when Plaintiff claims he was denied the items for the First Seder ritual. (Doc. # 23 at 3.) Plaintiff also seeks to add an equal protection claim against Thomas Prince. (*Id.*) Finally, Plaintiff wishes to add equal protection and civil conspiracy claims against Defendants Baker, Willis, and McNeely. (*Id.*)

Preliminarily, while Plaintiff's motion states that he seeks leave to amend under Federal Rule of Civil Procedure 15(b)(1), which pertains to amendments during and after trial, it is clear from his briefing that he seeks leave to amend under Rule 15(a) and Local Rule 15-1.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2).

3

Defendants did not consent to the amendment; therefore, Plaintiff must obtain leave of court to file his proposed amended pleading. While the court should freely give leave to amend when justice requires, leave need not be granted where amendment: "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *Amerisource Bergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citation omitted).

Local Rule 15-1 provides that a party seeking leave to amend "shall attach the proposed amended pleading to any motion to amend, so that it will be complete in itself[.]" L.R. 15-1.

### III.  DISCUSSION

Plaintiff seeks to add Thomas Prince as a defendant in connection with his existing First Amendment claim. (Doc. # 23-1 at 4-7.) Plaintiff also wishes to add an equal protection claim against Thomas Prince. (Doc. # 23-1 at 8-9.) Finally, although it is not entirely clear, it appears that Plaintiff also seeks to equal protection and civil conspiracy claims against Defendants Baker, McNeely, and Willis. (Doc. #23-1 at 10.)

Preliminarily, the court grants Plaintiff's motion to exceed the page limit for his proposed amended complaint (Doc. # 24).

**A.  First Amendment (Thomas Prince)**

The First Amendment to the United States Constitution provides that Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof. U.S. Const. amend I. The United States Supreme Court has held that prisoners retain their First Amendment rights, including the right to free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted); *Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008) (citations omitted); *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam) ("The right to exercise religious practices and beliefs does not terminate at the prison door.") (citations omitted).

While prisoners retain their First Amendment right to free exercise of religion, it is well recognized that "[l]awful incarceration brings about the necessary withdrawal or limitation of

4

1 many privileges and rights, a retraction justified by the considerations underlying our penal
2 system." *Shakur*, 514 F.3d at 884 (internal quotation marks and citations omitted).
3 Therefore, "[w]hen a prison regulation impinges on inmates' constitutional rights, the
4 regulation is valid if it is reasonably related to legitimate penological interests." *Turner v.*
5 *Safely*, 482 U.S. 78, 89 (1987); *see also O'Lone*, 482 U.S. at 349; *Shakur*, 514 F.3d at 884;
6 *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995); *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th
7 Cir. 1997), *overruled on other grounds in Shakur*, 514 F.3d at 884-85.

8      To determine if a prison regulation is reasonably related to a legitimate penological
9 interest, the court considers the following factors set out in *Turner v. Safely*: (1) whether there
10 is a "'valid, rational connection' between the prison regulation and the legitimate governmental
11 interest put forward to justify it"; (2) "whether there are alternative means of exercising the
12 rights that remain open to prison inmates"; (3) what impact the requested accommodation
13 "will have on guards and other inmates, and on the allocation of prison resources generally";
14 and (4) whether the "absence of ready alternatives is evidence of the reasonableness of a prison
15 regulation" or the existence of obvious alternatives evidences an "exaggerated response."
16 *Turner*, 482 U.S. at 89-90. In evaluating a free exercise claim, courts must give "appropriate
17 deference to prison officials," *O'Lone*, 482 U.S. at 349, because "the judiciary is 'ill-equipped'
18 to deal with the difficult and delicate problems of prison management." *Thornburgh v. Abbot*,
19 490 U.S. 401, 407-08 (1989) (citation omitted).

20      The proposed amended complaint alleges that Thomas Prince was the shift supervisor
21 on March 29, 2010, and failed to take the necessary actions to ensure that Plaintiff's
22 constitutional right to observe Passover and eat only kosher for Passover meals was not
23 violated. (Doc. # 23-1 at 5-6.) He asserts that Thomas Prince received an emergency grievance
24 from Plaintiff on March 29, 2010, at approximately 6:50 p.m, related to the kosher for Passover
25 and Seder meals. (*Id.* at 6.) He also claims that Thomas Prince had knowledge of the
26 observance of Passover because he was the recipient of a memorandum dated March 26, 2010,
27 outlining the Passover ritual and dietary restrictions. (*Id.*) Therefore, he contends that Thomas

28                                               5

Prince had knowledge of Plaintiff's need to receive the Seder items and kosher for Passover meal on March 29, 2010. (*Id.*)

Plaintiff alleges that Thomas Prince was the shift supervisor on duty from 6:00 p.m. on March 20, 2010, through 6:00 a.m. on March 30, 2010, when Plaintiff filed his emergency grievance. (Doc. # 23-1 at 6.) As a result, Plaintiff contends that Thomas Prince was in a position to correct the constitutional deprivation, but failed to do so. (*Id.*) Plaintiff asserts that Thomas Prince should have asked kitchen staff to heat up some kosher for Passover food for Plaintiff when he saw Plaintiff was merely given kosher food, or done so himself. (*Id.*)

Plaintiff asserts that he did not become aware of Thomas Prince's involvement until Defendants produced a memorandum in connection with their motion to dismiss acknowledging that Passover commences on March 29, 2010, and discussing associated dietary restrictions. (Doc. # 23 at 4.) Plaintiff claims that Thomas Prince directly participated in the denial of Plaintiff's First Amendment rights. (*Id.* at 6.)

Plaintiff has stated a colorable claim for denial of his First Amendment right to the free exercise of religion as to Thomas Prince. Therefore, Plaintiff's motion for leave to amend to add a First Amendment claim against Thomas Prince is granted.

**B. Equal protection (Thomas Prince)**

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. *See San Antonio School Dist. v. Rodriguez*, 411 U.S. 1 (1972). To state a section 1983 claim based on a violation of the equal protection clause of the Fourteenth Amendment, a plaintiff must allege that the defendants acted with intentional discrimination against plaintiff based on race, gender, or religion. *See Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997); *Federal Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991); *Lowe v. City of Monrovia*, 775 F.2d 998, 1010 (9th Cir. 1985). Prisons must afford an inmate "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam).

However, this does not mean that all religions must receive identical treatment and resources. *Cruz*, 405 U.S. at 322 n. 2. Instead, prisons must make "good faith accommodation of the [prisoner's] rights in light of practical considerations." *Allen v. Toombs*, 827 F.2d 563, 569 (9th Cir. 1987) (citation omitted).

Thus, prison officials violate an inmate's equal protection rights where they act in an intentionally discriminatory manner in failing to accommodate the inmate's rights in light of practical considerations. *Freeman*, 125 F.3d 732; *Allen*, 827 F.2d at 569.

To establish a violation of the Equal Protection Clause, the plaintiff must present allegations that amount to discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 239-40 (1976). A plaintiff may also satisfy this burden by tendering evidence of disparate treatment sufficient to raise an inference of discriminatory purpose. *Freeman*, 125 F.3d at 737-39; *see also Allen*, 827 F.2d at 569 (adopting same approach).

In his proposed amended complaint, Plaintiff alleges that Thomas Prince was in possession of an emergency grievance filed by Plaintiff relating to the denial of his right to eat a kosher for Passover meal on March 29, 2010, and denial of the Seder dinner meal on the same date. (Doc. # 23-1 at 8.) Plaintiff contends that Thomas Prince intentionally refused to provide Plaintiff with these meals because Plaintiff is Jewish. (*Id*.) He asserts that on the night in question, Thomas Prince had no issues from any other race or religion regarding not being fed dinner. (*Id*.)

The court finds that Plaintiff fails to state an equal protection claim against Thomas Prince, and therefore, amendment would be futile in this regard. While Plaintiff alleges that Thomas Prince did not have any issue with any other race or religion regarding not being fed their religious meals, he has not alleged what is required for an equal protection claim, *e.g.*, that inmates of other religions were allowed to have the supplies to observe their holidays, while Plaintiff was refused his Seder items. Plaintiff has simply not alleged facts amounting to intentional discrimination. Plaintiff has been given two chances to correctly allege an equal protection claim, and having failed to do so, should not be given further leave to amend in this

7

regard.

Plaintiff's motion for leave to amend his Complaint to add an equal protection claim against Thomas Prince is denied.

**C. Equal protection & civil conspiracy (Baker, McNeely, Willis)**

In his proposed amended complaint, Plaintiff alleges that Defendants Baker, McNeely, and Willis conspired to violate Plaintiff's constitutional right to equal protection of the laws, when they denied the existence of three (3) emergency grievances filed by Plaintiff. (Doc. # 23-1 at 10.) He further alleges that Defendants hoped to eliminate their culpability in connection with the denial of Plaintiff's First Amendment rights. (*Id.*)

Plaintiff has failed once again to include allegations amounting to an equal protection claim against Defendants Baker, McNeely, and Willis. (*See* Doc. # 6.) The legal standard for alleging an equal protection claim is set forth above. Plaintiff has included no new allegations that these Defendants intentionally discriminated against him based on his religion, or on any other cognizable basis.

To state a claim for conspiracy to violate one's constitutional rights under 42 U.S.C. § 1983, the plaintiff must allege specific facts to support the existence of the claimed conspiracy. *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). The elements of a conspiracy claim brought under section 1983 are: (1) an agreement or meeting of the minds to violate constitutional rights, and (2) an actual deprivation of those rights resulting from the alleged conspiracy. *See Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006);*Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002).

Plaintiff's civil conspiracy claim is based on an alleged equal protection violation, which the court has found was not properly alleged. Without an equal protection claim, Defendants could not have conspired to violate Plaintiff's equal protection rights. Therefore, Plaintiff's motion for leave to amend to add equal protection and civil conspiracy claims against Defendants Baker, McNeely, and Willis is denied.

///

### IV.  CONCLUSION

**IT IS HEREBY ORDERED THAT:**

(1) Plaintiff's motion to exceed the page limit for his amended complaint (Doc. # 24) is **GRANTED**.

(2) Plaintiff's motion for leave to amend (Doc. # 24) is **GRANTED IN PART AND DENIED IN PART** as follows:

   (a) Plaintiff's motion for leave to amend is **GRANTED**, and Plaintiff has leave to amend to add a claim for denial of his First Amendment right to the free exercise of religion as to **Thomas Prince;**

   (b) Plaintiff's motion for leave to amend is **DENIED** with respect to his request to: (i) add an equal protection claim against Thomas Prince; and (ii) add equal protection and civil conspiracy claims against Defendants Baker, McNeely, and Willis.

(3) The Clerk of Court shall detach and **FILE** the Amended Complaint (Doc. # 23-1).

(4) The Clerk **shall electronically serve a copy of this order, along with a copy of Plaintiff's Amended Complaint, on the Office of the Attorney General of the State of Nevada, to the attention of Pamela Sharp**.

(5) The Office of the Attorney General shall advise the court within twenty-one (21) days of the date this Order whether they can accept service of process for Thomas Prince, or provide the last known address, *under seal,* of Thomas Prince if they cannot accept service. If the Attorney General accepts service of process for Thomas Prince, he and the existing Defendants shall file and serve an answer or other response to the Amended Complaint within thirty (30) days of the date of the notice of acceptance of service of Thomas Prince. If the Attorney General does not accept service of process for Thomas Prince, the existing Defendants shall file and serve an answer or other response to the Amended Complaint within thirty (30) days of the filing of the last known address of Thomas Prince.

(6) If service cannot be accepted for Thomas Prince, Plaintiff shall file a motion identifying Thomas Prince, requesting issuance of a summons to the address filed under seal

by the Attorney General.  Plaintiff is reminded that, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, service must be accomplished within one hundred twenty (12) days of the date of filing of the Amended Complaint.

(7) In view of the court's order granting leave to amend in part, the following motions are **<u>DENIED WITHOUT PREJUDICE</u>**, as moot:

(a) Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. # 17);

(b) Plaintiff's Motion for Sanctions re Defendants' Reply Brief (Doc. # 37);

(c) Plaintiff's Motion to Strike Defendants' Reply Brief (Doc. # 38);

(d) Plaintiff's Motion Requesting the Court to Modify and Allow Additional Pages to Plaintiff's Opposition to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. # 40);

(e) Defendants' Motion to Strike Plaintiff's Motion with Declaration to Support Plaintiff's Reply to Defendants' Opposition to Plaintiff's Declaration for (27) Exhibits Within Plaintiff's Opposition to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. # 44).

DATED: January 30, 2012.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE